April 6, 1977

## 77–18  MEMORANDUM OPINION FOR THE ATTORNEY GENERAL

### Application of the Hatch Act to the Vice President's Staff

In a previous memorandum to the President's Counsel regarding political trips, we indicated that the exception in 5 U.S.C. § 7324(d)(1) for employees paid "from the appropriation for the Office of the President" did not apply to persons paid from the separate line item in the Executive Office Appropriation Act of 1977 for "expenses necessary to enable the Vice President to provide assistance to the President in connection with specially assigned functions." When our Office contacted the Hatch Act section of the General Counsel's Office at the Civil Service Commission, we were informed that the issue of the application of the Hatch Act to the Vice President's staff had apparently not arisen before. Because the Civil Service Commission had no official views on the subject, we conducted our own study of the question and concluded on the basis of the legislative history of both the Hatch Act and the Appropriation Act that the Vice President's Office was covered.

We read a copy of a letter written by a former Civil Service Commission General Counsel, stating that his Office "has interpreted the language found in 5 U.S.C. § 7324(d)(1) to be applicable to employees paid from the appropriation for the White House Office or from appropriations made to provide assistance to the President in connection with special functions or projects." On this basis, and without further discussion, it was concluded that the Vice President's Special Counsel was exempt. We do not believe this conclusion is consistent with the original intent of the Hatch Act.

The predecessor of 5 U.S.C. § 7324(d) was introduced in 1939 in the House as a floor amendment to be substituted for the original § 9 of the

Hatch bill, S. 1871. 84 Cong. Rec. 9625.[1] In introducing the amendment, Representative Dempsey explained that its purpose was to allow the President, the Vice President, and other policymaking officials to defend their actions in public. 84 Cong. Rec. 9626; *see, id.* at 9630. To serve this purpose, he continued, "the amendment . . . clearly exempts . . . the staff of the President and those who obtain their salaries from the appropriation made for White House purposes." *Id.*

At the time of the enactment of the Hatch Act in 1939, the appropriation for the "Office of the President," which provided for "personal services in the office of the President," was the only appropriation for personnel under the heading "Executive Office." [2] Later that year the Executive Office of the President was established, and the Bureau of the Budget and other agencies were transferred to it.[3] To reflect the change in organization, the next Appropriation Act carried a general heading for "Executive Office of the President." Instead of "Office of the President," the item covering "personal services" was entitled "White House Office." [4] With changes in form, the appropriation for the President's personal staff has been carried under this item since then.[5]

In other words, the current item for the "White House Office" is the lineal descendant of the only appropriation for Presidential staff that existed when the Hatch Act was passed. As new functions and agencies have been added to the Executive Office of the President, this item has continued as the source of the salaries of the inner circle of personal

[1] In pertinent part, the amendment, as enacted in 1939, reads:

For the purposes of this section the term "officer or employee" shall not be construed to include (1) the President or Vice President of the United States; (2) persons whose compensation is paid from the appropriation for the office of the President; (3) heads and assistant heads of executive departments; (4) officers who are appointed by the President with the advice and consent of the Senate, and who determine policies to be pursued by the United States in its relations with foreign powers or in the Nation-wide administration of Federal laws. 53 Stat. 1148.

Clause (1) has since been stricken as unnecessary. *See* 5 U.S.C. § 7324, Historical and Revision Note.

[2] The item for "Office of the President" read:

Salaries: For personal services in the office of the President, including the Secretary to the President, and two additional secretaries to the President at $10,000 each: $136,500: Provided, that employees of the executive departments and other establishments of the government may be detailed from time to time to the office of the President of the United States for such temporary assistance as may be deemed necessary. 53 Stat. 524.

[3] Reorganization Plan No. 1 of 1939, 53 Stat. 1423. The Plan does not mention the Office of the President or the White House Office.

[4] Independent Offices Appropriation Act of 1941, 54 Stat. 112. Except for an additional authorization for six administrative assistants, the language was identical to the prior act. The President's message supporting the reorganization plan, the legislative response to the plan, and the legislative history of the Appropriation Act do not discuss the change.

[5] The current item reads:

For expenses necessary for the White House office as authorized by law, including not to exceed $3,850,000 for . . . other personal services without regard to the provisions of law regulating the employment and compensation of persons in the Government service; . . ." Executive Office Appropriation Act of 1977., Pub. L. No. 94–363, 90 Stat. 966.

advisers to the President. It is this group of advisers, assistants, and speech writers whom the sponsor of the exemption viewed as adjuncts to the President in his role as a political officer.

During the debate on the 1939 amendment, Representative Michener raised the issue whether personnel of agencies such as the Bureau of the Budget, which would be transferred to the Executive Office of the President under the proposed Reorganization Plan of 1939, would be covered by the "Office of the President" exemption. 84 Cong. Rec. 9633. To clarify this point, he offered an amendment that would have restricted the exemption to positions in the Office of the President "as classified prior to the Reorganization Act of 1939." *Id*. When Mr. Michener's time expired, no Member of the House, including Representative Dempsey, attempted to address the point. There was no debate, and the proposal was never voted on. 84 Cong. Rec. 9634. The indifference of the House to the point suggests that the House considered the amendment unnecessary, as it understood that the exemption clearly applied only to what Mr. Michener called "the President's secretariat and incidental employees," *i.e.,* employees in "the Office of the President."[6]

It is for these reasons that we conclude that the exemption to the Hatch Act in 5 U.S.C. § 7324(d)(1) was intended to apply only to persons paid from the item for the "White House Office." This office has previously advised the White House that the "Office of the President" is the equivalent of the White House Office.[7]

It should be noted that persons detailed from other agencies to the White House are ordinarily subject to the Hatch Act because they are not paid out of the White House Office appropriation.[8] In the Executive Office Appropriation Act of 1971, 84 Stat. 866, Congress significantly increased the appropriation for the White House Office by transferring Special Projects from the item. The reason the transfer was requested was to pay Presidential staff who had been essentially on permanent detail from other agencies out of this item.[9] Although the point was not raised in the legislative history of the 1971 Act, it is reasonable to conclude that the White House realized that the change would enlarge the number of employees who were clearly exempt from the Hatch Act.

---

[6] There is no discussion of the applicability of the Hatch Act in the legislative history of the 1941 appropriation for the President's Office.

[7] We previously advised the White House that Office of Management and Budget (OMB) personnel were subject to the Hatch Act and that Domestic Council staff paid under a separate item were subject to the Hatch Act.

[8] We have also advised the White House that detailed employees may be subject to the Hatch Act even if paid from this appropriation. Authority to detail is provided by 3 U.S.C. § 107.

[9] Hearings Before a Subcommittee of the Appropriations Committee of the House of Representatives, Executive Office Appropriations for 1971, 91st Cong., 2d Sess., pp. 5-7 *See also* H.R. Rep. 91-994, 91st Cong., 2d Sess.

In the same statute, a separate line item for "expenses necessary for the Vice President to provide assistance to the President in connection with specially assigned functions" was added for the first time. The spokesman for the Administration testified before the House Committee that over the years the responsibility of the Vice President in assisting the President had increased and that he had been provided with a sufficient staff only by a detail of employees from other agencies. The purpose of the appropriation, he explained, was to give the Vice President an explicit source of staff support for his governmental responsibilities in the executive branch.[10] The legislative history does not discuss the applicability of the Hatch Act to these employees.

In light of the legislative history discussed above, it would not appear that persons paid from this item are within the scope of 5 U.S.C. § 7324(d)(1). If either the Administration or Congress had wanted them exempted from the Hatch Act, it could have explicitly done so by following the procedure used at the same time for detailed Presidential staff, such as shifting expenses from other appropriations to the "White House Office" item. Instead, a separate line item was requested and given. In the case of Vice President Mondale, he was able to retain his legislative staff, who were not covered by the Hatch Act.[11] Because his legislative appropriation was not decreased in 1971 and subsequent years, it could have been expected that his political staff would be paid from this source.[12] Finally, because the Administration requested staff assistance for the Vice President in performing his functions within the executive branch,[13] it is reasonable to conclude that Congress intended to provide a staff only for those functions.

The Office of the Vice President has argued that 5 U.S.C. § 7324(d)(1) applies because the item in question provides "for expenses necessary to enable the Vice President to provide assistance to the President in connection with specially assigned functions." In other

---

[10] Hearings before a Subcommittee of the Appropriations Committee of the House of Representatives, Executive Offices Appropriations for 1971, 91st Cong., 2d Sess., pp. 185–89. See also H.R. Rep. 91-994, 91st Cong., 2d Sess.

[11] In 1971, the Vice President's appropriation for executive staff was $700,000. Executive Offices Appropriation Act of 1971, Pub. L. No. 91-422, 84 Stat. 872. For "clerical assistance to the Vice President," he received $367,263 under the Legislative Branch Appropriation Act of 1971 Pub. L. No. 91-382, 84 Stat. 807. This was an increase from the prior year. For 1977, the Vice President received $1,246,000 for executive staff and $615,015 for legislative staff. See 90 Stat. 966, 967.

[12] In 1971, the Vice President's legislative staff numbered 23 persons, clerical and otherwise. Hearings of a Subcommitee of the Senate Appropriation Committee, Executive Offices Appropriation of 1971, 91st Cong., 2d Sess., p. 1255. There is no discussion of their duties in the legislative history.

[13] Among the Vice President's functions cited as requiring staff were his membership in the Cabinet, the National Security Council, and the Council on Environmental Quality; his duties as head of the Office of Intergovernmental Relations; and his membership on various advisory committees and councils. Hearings by a Subcommittee of the Appropriation Committee of the House of Representatives, Executive Office Appropriation of 1971, 91st Cong., 2d Sess., pp. 185-86. The testimony concentrated on the need for staff support if the Vice President were to function as an adviser and official spokesman. Id. at 187-89.

words, it is asserted that the status of the Vice President's staff is derived from the duties assigned to the Vice President. But this argument proves too much. The Vice President has no active executive responsibilities under the Constitution, and the President has no constitutional duty to assign him any. The Vice President's status as an assistant to the President is therefore the same as that of other policy-making officials or advisers who are not subject to the Hatch Act.[14] If it is argued that employees who furnish him with staff assistance derive an exemption on the basis of his functions, there is no reason why the same should not be true of the staff of the Office of Management and Budget, the Domestic Council, and other agencies within the Executive Office of the President whose heads are exempt. This result would be contrary to the congressional intent underlying 5 U.S.C. § 7324(d) and to its settled construction. Had Congress considered derivative exemption possible under the Act, it would not have been necessary for the Dempsey amendment to provide specifically for the President's personal staff after having exempted the President or to exempt assistant heads as well as heads of departments.

In conclusion, it is our opinion that the legislative intent behind 5 U.S.C. § 7324(d)(1) was to exempt from the Hatch Act a limited number of close personal advisers to the President and their staff members. This was accomplished by basing the exemption on the appropriation for the "Office of the President," from which this inner circle was paid. At the same time, this was the only appropriation for personnel directly under the President's control. As other agencies were added to the Executive Office of the President and nomenclature changed, the White House Office was the only lineal descendant of the former Office of the President. The remaining employees in the Executive Office of the President are subject to the Hatch Act unless covered by another exemption. Nothing in the legislative history of the appropriation for the Vice President's executive staff shows a congressional intent to treat those employees differently from other staff in the Executive Office of the President outside the White House Office. In our opinion, there is no rational basis for doing so that will distinguish the Vice President's staff from other staffs that are not exempt.

It has been suggested that this interpretation is archaic and anomalous because the staffs of the President and Vice President are for practical purposes intermingled. It is true that when Congress enacted the Hatch Act it did not consider the role of the Vice President's staff, because the Vice President had no role in the executive branch at that time. Circumstances have changed, and Presidents now use Vice Presidents as both political spokesmen and policy advisers. It may be desir-

---

[14] The original version of the Hatch Act specifically exempted the President and Vice President. See U.S.C. § 7324, Historical and Revision note; Act of August 2, 1937, § 9(a), 53 Stat. 1148. Heads and assistant heads of executive or military departments and policy-making officials appointed subject to advice and consent by the Senate are exempt. 5 U.S.C. § 7324(d)(2)-(3).

able to have the Vice President's staff as freely available for political duties as the President's. If so, legislation will be necessary. One approach would be to incorporate the appropriation for the Vice President's staff in the general appropriation for the White House Office, thereby removing all doubts on the matter. The other, more direct, solution would be to amend the Hatch Act specifically to exempt the Vice President's staff.

JOHN M. HARMON
*Acting Assistant Attorney General*
*Office of Legal Counsel*
